IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Vicky T. Bennett, | ) | C/A No.: 4:10-1417-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CSX Transportation, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the court on the motion of defendant CSX Transportation, Inc. ("CSX"), made pursuant to 28 U.S.C. § 1404, to transfer venue to the United States District Court for the Eastern District of North Carolina [Entry #13]. For the reasons stated below, the court recommends the District Judge grant CSX's motion to transfer venue.

I.  Introduction

Plaintiff Vicky Bennett ("Plaintiff") began working as a conductor with CSX in July 2008.[1] Compl. ¶ 7. She claims she was discriminated against on the basis of her race and/or sex, and that as a result of the hostile work environment at CSX, she suffered both physical and psychological injuries. On June 2, 2010, Bennett filed this lawsuit asserting ten counts against CSX, pursuant to the Federal Employers' Liability Act ("FELA"), Title VII of the Civil Rights Act of 1964, and state common law (Compl. ¶ 3, 29–96). On August 4, 2010, CSX filed an answer, as well as the motion to transfer venue.

---

[1] In her Opposition Memorandum, Plaintiff claims she began working in June 2008. See Pl.'s Opp. at 1 [Entry #19].

According to Plaintiff, she seeks recovery based on a "chain of events that originated in Florence, South Carolina." Pl.'s Opp. at 3 [Entry #19]. She states that on August 18, 2008, she was provided a work schedule that required her to work in Portsmouth, Virginia on August 20, 2008, and in Florence, South Carolina on August 21, 2008. After attempting to contact her supervisor, North Carolina Trainmaster James Gilbert, Plaintiff contacted one of CSX's South Carolina Trainee Supervisors, Lorenzo Wilkins, who advised her to report to work in Florence, South Carolina on August 20, 2008 instead of Portsmouth, Virginia. After driving to Florence on August 20, 2008, Plaintiff received a phone call from Trainmaster Gilbert, who was in North Carolina. Plaintiff alleges Gilbert threatened her over the telephone and forbade her from contacting other supervisors.

On August 22, 2008, Plaintiff reported to work as scheduled in Fayetteville, North Carolina (Cumberland County), where she claims Trainmaster Ed Howze demanded that she get into his company vehicle. She alleges that Howze drove off with her in his truck and against her will and spent approximately thirty minutes berating and threatening her before ultimately telling her to "get off of his yard." (Compl. ¶ 25) Plaintiff alleges that on August 25, 2008, her vehicle was vandalized while parked in the CSX employee parking lot in Rocky Mount, North Carolina (Nash County). She claims that the vehicle had been spray-painted with the words "Stay of[f] the railroad" and "Stupid Nigga," and that there was a mannequin head with a black face and noose around its neck in the backseat.

Plaintiff claims that although the events happened within a relatively short period of time (i.e., six days), "the discrimination intensified as a direct result of Plaintiff requesting help from Mr. Wilkins and reporting to work in Florence, South Carolina." Pl.'s Opp. at 4.

II.     Discussion

    A.     Magistrate Judge's Authority

This employment case has been automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(g) for all pretrial proceedings. The stand-alone motion to transfer venue was referred to the undersigned for disposition.[2] A motion to transfer venue does not explicitly fall within any of the dispositive motions set forth in 28 U.S.C. § 636(b)(1)(A). This omission has led to a split of opinion as to whether a Magistrate Judge has the authority to order a transfer of venue to another district. Within the District of South Carolina, there are cases in which the Magistrate Judge has ordered the transfer of venue (*e.g., Feralloy Corp. v. Spig Industry, Inc.,* C/A No. 2:09-3028-RMG-BM, 2010 WL 3432283 (D.S.C. 2010); and *Realson v. University Medical Pharmaceuticals Corp.*, C/A No. 4:09-3277-TLW-TER, 2010 WL 1838911 (D.S.C. 2010)), and other cases in which the Magistrate Judge has prepared a Report and Recommendation on the motion to transfer venue (*e.g., Massi v. Lomonaco*, C/A No. 0:10-265-CMC-PJG, 2010 WL 2429234 (D.S.C. 2010); *Hayes v. Paschall Truck Lines, Inc.,* C/A No. 3:09-1869-JFA-JRM, 2010 WL 2757227 (D.S.C. 2010);

---

    [2] Often, a motion to transfer venue is filed together with a motion to dismiss. In the instant case, however, a stand-alone motion to transfer venue was filed.

and *Thomas v. Lockheed Martin Corp.*, C/A No. 6:06-1342-HMH-BHH, 2006 WL 2864423 (D.S.C. 2006)).

If the motion to transfer venue is considered nondispositive, the more deferential standard of "clearly erroneous or contrary to law" found in 28 U.S.C. § 636(b)(1)(A) applies to an appeal of the Magistrate Judge's transfer order. If the motion is considered dispositive, the Magistrate Judge should enter a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B), pursuant to which objections are considered on a de novo standard of review under Fed. R. Civ. P. 72.

In the absence of governing Fourth Circuit precedent, the undersigned elects to submit, pursuant to 28 U.S.C. § 636(b)(1)(B), a Report and Recommendation subject to de novo review rather than a final order on the motion. This approach preserves the prerogative of the parties to argue and the presiding District Judge to determine whether to review the undersigned's opinion under a de novo or clearly erroneous standard of review.

B.     Motion to Transfer Venue

In its motion, CSX submits that the court should transfer venue for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404. Specifically, CSX argues that all of the acts or omissions Plaintiff complains about occurred in North Carolina or over the telephone, that almost all the witnesses and treating physicians reside and work in North Carolina, that access to sources of proof is more readily available in North Carolina, and that the cost of transporting and maintaining witnesses would be less

if the case were heard in North Carolina.

Plaintiff opposes the transfer of venue, claiming that CSX's employees acted in a discriminatory and harassing manner toward her while she was working for CSX in Florence, South Carolina. Plaintiff claims that she has a substantial connection to South Carolina because Florence was the locus of events that propagated the hostility that followed and that her choice of forum should be given substantial weight. She claims that several material witnesses at issue are CSX employees who travel the Atlantic Coast route from Richmond, Virginia to Florence, South Carolina on a daily basis, and that other material witnesses are South Carolina residents. She claims that her counsel would be inconvenienced by a trial in North Carolina and that she cannot obtain a fair and impartial trial in North Carolina because the demographics of the potential jury pool in North Carolina will not be representative of individuals who are her peers. She feels a trial near her home would place her and her family at risk for additional racially-motivated vandalism and threats to her life and livelihood.

C. Analysis

Once a defendant raises a proper objection to venue, the plaintiff bears the burden of proof of establishing that the venue he chose is proper. *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F.Supp. 306, 316 (D.S.C. 1992); Wright, Miller & Cooper, Federal Practice and Procedures § 3826 (2d ed. 1986). With respect to FELA actions, 45 U.S.C. § 56 "defines the proper forum." *Ex parte Collett*, 337 U.S. 55, 60 (1949). Section 56 allows an action to be brought "in the district of the residence of the defendant, or in

Page 5 of 14

Case 5:10-cv-00493-BO   Document 25   Filed 09/30/10   Page 5 of 14

which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." CSX does not dispute that it does business in the District of South Carolina; therefore, this district is a proper forum under the statute.

Section 1404 of Title 28 of the United States Code permits the court to transfer the case, even though venue may be proper, "[f]or the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The action might have been brought in the Eastern District of North Carolina because "the cause of action arose" there under 45 U.S.C. § 56. Specifically, Plaintiff complains of harassment while riding in Howze's truck in Fayetteville, North Carolina (Cumberland County) and harassment in the form of vandalism to her vehicle parked on CSX's yard in Rocky Mount, North Carolina (Nash County). The Eastern District of North Carolina serves 44 North Carolina counties from Raleigh to the Atlantic coast and has four divisions (Northern, Southern, Eastern, and Western).[3] Cumberland County and

---

[3] The Northern Division includes Bertie, Camden, Chowan, Currituck, Dare, Gates, Hertford, Northampton, Pasquotank, Perquimans, Tyrrell, and Washington counties; the Southern Division includes Bladen, Brunswick, Columbus, Duplin, New Hanover, Onslow, Pender, Robeson, and Sampson counties; the Eastern Division includes Beaufort, Carteret, Craven, Edgecombe, Greene, Halifax, Hyde, Jones, Lenoir, Martin, Pamlico, and Pitt Counties; and the Western Division includes Cumberland, Franklin, Granville, Harnett, Johnston, Nash, Vance, Wake, Wayne, Warren, and Wilson counties. http://www.nced.uscourts.gov/html/counties.htm

Nash County are within the Western Division of the United States District Court for the Eastern District of North Carolina.

In deciding motions to transfer venue under 28 U.S.C. § 1404(a), courts are guided by the factors cited by the Supreme Court as relevant to *forum non conveniens* determinations. *Terry v. Walker*, 369 F.Supp.2d 818, 822 (W.D.Va. 2005). These factors include:

> (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) the possibility of viewing premises, if applicable; (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) factors of public interest, including the relative congestion of court dockets and a preference for holding a trial in the community most affected.

*Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). Some courts have considered additional factors.[4] Whether to transfer a matter to another district under 28 U.S.C. § 1404 is committed to the discretion of the trial court. *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

The undersigned has undertaken this analysis with the competent evidence in the

---

[4] The court in *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F. Supp. 93, 96 (W.D.N.C. 1990) considered eleven factors, including the eight *Gulf Oil* factors and the following four additional factors: (1) the residence of the parties; (2) the enforceability of a judgment, if obtained; (3) the relative advantages and obstacles to a fair trial; and (4) the avoidance of unnecessary problems with conflict of laws. At least one district court in South Carolina has adopted the eleven factors in a recent case. *N. Am. Rescue Prod., Inc. v. Bound Tree Med.*, No. 6:07-2936-HFF, 2008 WL 304881, *1 (D.S.C. Jan. 31, 2008).

record and recommends that transfer is proper.

1.   *The plaintiff's initial choice of forum.*

Traditionally, the plaintiff's initial choice of forum was accorded substantial weight. *Gulf Oil*, 330 U.S. at 509. However, in the instant case, where Plaintiff does not reside within the District of South Carolina, and in fact resides in North Carolina, and where arguably none of the complained-of conduct occurred within South Carolina, the importance of Plaintiff's choice is greatly diminished. *DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 371 (D.S.C. 1976). Therefore, to the extent that this factor favors Plaintiff, its effect is minimal.

2.   *The relative ease of access of proof.*

Plaintiff is a resident of Northampton County, North Carolina, and she has identified the following additional witnesses: (1) her psychiatrist Dr. Karen Ballou of Roanoke Rapids, North Carolina (Halifax County); (2) her psychologist Dr. Nancy Alford of Roanoke Rapids, North Carolina (Halifax County); (3) Chadwick T. Davis, a Cheraw, South Carolina resident and a previous CSX employee who observed the vandalism to Plaintiff's vehicle; and (4) Glen Thompson, a Garysburg, North Carolina (Northampton County) resident and a career CSX Trainman and Locomotive Engineer who witnessed the hostile environment at the Rocky Mount yard and the effects of the events on Plaintiff.   Plaintiff and Thompson reside within the Western Division, and her two treating physicians are located in the Eastern Division. Davis is a South Carolina resident. All have submitted affidavits that traveling to

Florence, South Carolina, would not inconvenience them.

CSX has identified numerous witnesses, the majority of whom live in North Carolina, including the following:

(1) CSX employees who are alleged to have participated in or observed the alleged discriminatory and negligent acts (Howze (of Wilson County), Heyward W. Watford, Jr. (of Nash County), Wallace O'Neal (of Nash County), James Bradley (of Nash County), Donna Thomas (of Nash County), Scott Zipko (of Nash County), Shaun Lynch (of Edgecombe County), R.K. Turner (of Edgecombe County), J.A. Frazier (of Nash County), and James Williams (of Nash County));

(2) Plaintiff's treating physicians;

(3) the businesses that towed and made repairs to Plaintiff's vehicle (Don Bullock Chevrolet (of Nash County) and Byrd's Garage (of Halifax County)); and

(4) the law enforcement offices that investigated the vandalism incident (Rocky Mount Police Department and North Carolina State Bureau of Investigation).

CSX submits that only two individuals who witnessed or were involved in the incidents alleged live outside North Carolina: Gilbert, who lives in Georgia, and Brian Stussie, who lives in New York, and that no additional inconvenience will be placed on them to travel to North Carolina as opposed to South Carolina.

CSX itself will likely be a substantial source of testimonial and documentary evidence. CSX has indicated that the Eastern District of North Carolina will be a more convenient district in which to provide access to these sources of proof. Plaintiff argues that the CSX witnesses are not material to the case and that they are Rocky Mount crew members who travel between Richmond, Virginia and Florence, South Carolina on a daily basis, such

that they would not be inconvenienced by trial in South Carolina.

The sources of evidence that the parties have identified at this early stage in the litigation may not be exhaustive. Because the events giving rise to the injuries claimed by Plaintiff mostly, if not exclusively, occurred in the Eastern District of North Carolina, if any further evidence develops, it is more likely to be found in that district than in the District of South Carolina.

In light of the foregoing, the undersigned concludes by a preponderance of evidence that access to sources of proof will be easier if this case is heard in the Eastern District of North Carolina rather than the District of South Carolina.

   3.   *The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.*

While CSX will be able to require its own employees and officers to attend a trial and/or hearings and depositions without regard to which district maintains the action, the non-employee witnesses to the incidents, including law enforcement officers who participated in the investigation(s), or anyone with knowledge of the extent of Plaintiff's injuries, are not within the reach of the subpoena power of the United States District Court for the District of South Carolina. The same witnesses are within the subpoena power of the Eastern District of North Carolina. The cost of transporting and maintaining these witnesses would likely be less if the case is heard in North Carolina, where they reside.

This factor weighs in favor of CSX's motion to transfer venue.

*4.     The possibility of a view.*

The only premises to be viewed are located in North Carolina. This factor weighs in favor of CSX's motion to transfer venue.

*5.     Other practical problems that make a trial easy, expeditious, and inexpensive.*

If this case is tried in the Eastern District of North Carolina, it will be easier, more expeditious and less expensive for CSX. Considering the probable witnesses, it will likely be easier, more expeditious, and less expensive for Plaintiff as well, other than the inconvenience to her counsel. This factor weighs in favor of CSX's motion to transfer venue.

*6.     The administrative difficulties of court congestion.*

There is no competent evidence in the record to favor either party as to this factor. The court notes that the Federal Court Management Statistic's Judicial Caseload Profile for 2009 (the most recent year available) reports comparable statistics for numerical and median time disposition for civil cases in the Eastern Division of North Carolina and the District of South Carolina. The median time from filing to disposition of civil cases was 8.7 months in the Eastern District of North Carolina and 8.2 months in the District of South Carolina, which rank 6th and 5th respectively within the Fourth Circuit. Considering these statistics, this factor does not strongly weigh for or against transfer.

> 7. *The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action.*

The underlying facts giving rise to this action primarily took place in North Carolina. Although this is not a diversity case, in addition to her federal claims, Plaintiff has asserted state causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, supervision, and retention, false imprisonment, and simple assault. Because the underlying facts giving rise to these claims occurred in North Carolina, the court finds that this factor weighs in favor of transfer.

> 8. *Summary of Factor Analysis*

Because the statute provides no guidance as to the weight given each of the factors listed above, "much necessarily must turn on the particular facts of each case." *Samsung Electronics Co., Ltd v. Rambus, Inc.*, 386 F.Supp.2d 708, 716 (E.D.Va. 2005) (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure, § 3847 at 370 (2005)). Ultimately, "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

In sum, only factor 1 weighs in favor of Plaintiff's argument that the case not be transferred, and that weight is minimal; factors 2, 3, 4, 5, and 7 weigh in favor of CSX's argument that the case be transferred; and factor 6 provides no guidance. When the record is considered as a whole, the undersigned believes that CSX's motion to transfer should be

Page 12 of 14

Case 5:10-cv-00493-BO   Document 25   Filed 09/30/10   Page 12 of 14

granted.

Case law interpreting 28 U.S.C. § 1404 illustrates that a transfer of venue is appropriate when a majority of the witnesses and the scene of the accident are located in another venue, and when a majority of those involved would be better served by changing the venue. *See S. Ry. Co. v. Madden*, 235 F.2d 198, 200–01 (4th Cir. 1956) (abuse of discretion found in denying transfer when the only parties who would be inconvenienced by having the trial in South Carolina where it was brought were the plaintiff's attorneys, a photographer who took pictures of the accident scene, and a surgeon who treated plaintiff post injury; the site of plaintiff's injury, the location of all witnesses, and plaintiff's initial treating physicians were in North Carolina); *Akers. v. Norfolk and W. Ry. Co.*, 378 F.2d 78, 79 (4th Cir. 1967) (change of venue in FELA case from Virginia to West Virginia pursuant to § 1404 was appropriate where plaintiff resided in West Virginia, injury occurred in West Virginia, treatment was given in West Virginia, and the witnesses involved in the case lived in West Virginia; defendant having its general offices in Roanoke, Virginia, was not a compelling enough reason to deny defendant's request to transfer venue); and *Konovsky v. Baltimore and Ohio R.R. Co.*, 185 F.Supp. 325, 326–27 (W.D. Pa. 1960) (change of venue from Pennsylvania to Ohio in FELA action pursuant to § 1404 was appropriate because eyewitnesses were located in Ohio, transporting and maintaining witnesses in Ohio would be less expensive, plaintiff lived in Ohio, and the accident occurred in Ohio).

There are no compelling factors in favor of trying the case in the District of South

Carolina. Rather, the interests of justice are more adequately served by trial of the case in the court in the state where the plaintiff, her treating physicians, and a majority of the witnesses reside, and where the majority, if not all, of the alleged actions giving rise to the suit took place. Those fact witnesses who live in North Carolina will probably have an easier time appearing in proceedings conducted in their home state and district, and Plaintiff's initial choice of forum over 200 miles away from her home suggests that traveling for litigation does not pose a significant hardship for her. The public interest would be best served by a trial held in North Carolina, as the community most affected by the underlying issues in the case. The undersigned concludes that in the interest of justice, it would be more convenient for the parties and witnesses, less expensive, and more appropriate for this case to be tried in North Carolina.

III. Recommendation

For the foregoing reasons, it is recommended that CSX's motion to transfer venue [Entry # 13] be granted.

IT IS SO RECOMMENDED.

*[Signature]*

September 30, 2010                   Shiva V. Hodges
Florence, South Carolina           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**